No. 19-2142

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

SANDOR DEMKOVICH,

*Plaintiff-Appellee,*

v.

ST. ANDREW THE APOSTLE PARISH, CALUMET CITY, and
THE ARCHDIOCESE OF CHICAGO,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:16-cv-11576 – Judge Edmond E. Chang

### PETITION FOR REHEARING EN BANC

James C. Geoly
Archdiocese of Chicago
835 N. Rush Street
Chicago, IL 60611
(312) 534-8303

Alexander D. Marks
Burke, Warren, MacKay &
  Serritella, P.C.
330 North Wabash Ave., 21st Floor
Chicago, Illinois 60611
(312) 840-7000

Eric C. Rassbach
Daniel H. Blomberg
Daniel D. Benson
Christopher Mills
The Becket Fund for
  Religious Liberty
1200 New Hampshire Ave. N.W.,
Ste. 700
Washington, DC 20036
(202) 955-0095
erassbach@becketlaw.org

*Counsel for Defendants-Appellants*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Defendant-Appellant St. Andrew the Apostle Parish, Calumet City
Defendant-Appellant Catholic Bishop of Chicago, named as The Archdiocese of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Burke, Warren, MacKay & Serritella, P.C.
The Becket Fund for Religious Liberty

(3) If the party or amicus is a corporation: (i) Identify all its parent corporations, if any; and (ii) List any publicly held company that owns 10% or more of the party's stock:

The parties have no parent corporations and issue no shares of stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

FRAP 35(b) STATEMENT AND INTRODUCTION ..........................................1

STATEMENT .........................................................................................2

    A. Factual Background ..........................................................................2

    B. Procedural Background .....................................................................2

    C. Panel Decision ...............................................................................3

ARGUMENT ..........................................................................................5

    I. The panel decision moves this Court from one side of a 4-1
      circuit split to the other, allowing ministers to bring Title
      VII hostile work environment claims and effectively
      overruling *Alicea-Hernandez*. ...................................................5

      A. The panel's decision effectively overrules *Alicea-
        Hernandez*. ..............................................................................6

        1. *Alicea-Hernandez* barred all Title VII claims. ..............................6

        2. The *Alicea-Hernandez* plaintiff raised a hostile work
          environment claim. ..................................................................8

      B. The panel decision created a new 3-2 split. ................................ 11

    II. The panel split with the Sixth Circuit, D.C. Circuit, Texas,
      and Arkansas over whether the "neutral principles"
      doctrine used in church property disputes may be applied
      to ministerial employment disputes. ........................................... 14

    III. The panel decision directly conflicts with the Supreme
       Court's *Hosanna-Tabor* and *Our Lady* decisions. .............................. 16

    IV. Exceptionally important First Amendment principles are
       at stake............................................................................ 18

CONCLUSION...................................................................................... 19

CERTIFICATE OF COMPLIANCE............................................................. 20

CERTIFICATE OF SERVICE..............................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alicea-Hernandez v. Archdiocese of Chicago,*
No. 01-CV-8374, 2002 WL 598517 (N.D. Ill. Apr. 18, 2002)......................  10

*Alicea-Hernandez v. Catholic Bishop of Chicago,*
320 F.3d 698 (7th Cir. 2003)..................................................................*passim*

*Biel v. St. James School,*
926 F.3d 1238 (9th Cir. 2019).......................................................................  18

*Bollard v. Cal. Province of the Soc'y of Jesus,*
196 F.3d 940 (9th Cir. 1999)................................................................ 5, 7, 12

*Bollard v. Cal. Province of the Soc'y of Jesus,*
211 F.3d 1331 (9th Cir. 2000).......................................................................  11

*Combs v. Cent. Tex. Annual Conf. of the United Methodist
Church,*
173 F.3d 343 (5th Cir. 1999)...................................................................  5, 11

*Dayner v. Archdiocese of Hartford,*
23 A.3d 1192 (Conn. 2011) .............................................................................8

*EEOC v. Catholic Univ. of Am.,*
83 F.3d 455 (D.C. Cir 1996)........................................................... 15, 16, 17

*El-Farra v. Sayyed,*
226 S.W.3d 792 (Ark. 2006)..........................................................................  16

*Elvig v. Calvin Presbyterian Church,*
375 F.3d 951 (9th Cir. 2004)..................................................................*passim*

*Elvig v. Calvin Presbyterian Church,*
397 F.3d 790 (9th Cir. 2005).....................................................................  8, 12

*Emp't Division v. Smith,*
494 U.S. 872 (1990).......................................................................... 16, 17, 18

iv

*Gellington v. Christian Methodist Episcopal Church,*
    203 F.3d 1299 (11th Cir. 2000)................................................................ 5, 11

*Glaser v. Wound Care Consultants,*
    570 F.3d 907 (7th Cir. 2009)...................................................................1

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
    565 U.S. 171 (2012)................................................................*passim*

*Hutchison v. Thomas,*
    789 F.2d 392 (6th Cir. 1986)................................................................ 15

*Jones v. Wolf,*
    443 U.S. 595 (1979)................................................................ 14

*Kedroff v. St. Nicholas Cathedral,*
    344 U.S. 94 (1952)................................................................ 13

*Korte v. Sebelius,*
    735 F.3d 654 (7th Cir. 2013)................................................................ 10

*Lee v. Sixth Mount Zion Baptist Church,*
    903 F.3d 113 (3d Cir. 2018) ................................................................ 18

*McCarthy v. Fuller,*
    714 F.3d 971 (7th Cir. 2013)................................................................ 10

*McClure v. Salvation Army,*
    460 F.2d 553 (5th Cir. 1972)................................................................ 6, 13

*Md. & Va. Eldership of the Churches of God v. Church of God at
    Sharpsburg,*
    396 U.S. 367 (1970) ................................................................ 14

*NLRB v. Catholic Bishop,*
    440 U.S. 490 (1979)................................................................ 15

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    140 S.Ct. 2049 (2020)................................................................ 1, 15, 16, 17

*Serbian E. Orthodox Diocese v. Milivojevich,*
    426 U.S. 696 (1976)................................................................ 15

*Skrzypczak v. Roman Catholic Diocese of Tulsa*,
    611 F.3d 1238 (10th Cir. 2010)................................................ 5, 6, 8, 11, 12

*Sterlinski v. Catholic Bishop of Chicago*,
    934 F.3d 568 (7th Cir. 2019)....................................................... 7, 18

*Tomic v. Catholic Diocese of Peoria*,
    442 F.3d 1036 (7th Cir. 2006).............................................. 7, 13, 18

*Westbrook v. Penley*,
    231 S.W.3d 389 (Tex. 2007) ....................................................... 16

*Young v. N. Ill. Conf.*,
    21 F.3d 184 (7th Cir. 1994)................................................. 7, 16, 17

**Statutes**

28 U.S.C. § 1292 ...........................................................................3

Americans With Disabilities Act...........................................................2

Title VII of the Civil Rights Act of 1964 ...................................*passim*

**Other Authorities**

U.S. Const. amend. I..............................................................*passim*

Fed. R. App. P. 35 ...........................................................................1

## FRAP 35(b) STATEMENT AND INTRODUCTION

The panel decision would turn a fundamental First Amendment right into a pleading game. The Religion Clauses' "ministerial exception" forbids a minister from suing his church over his termination. But absent correction from the en banc Court or the Supreme Court, an unhappy minister in the Seventh Circuit can repackage a termination claim as a hostile work environment claim, thereby evading the ministerial exception altogether.

The panel's decision is not only wrong, but also creates intercircuit, intracircuit, and Supreme Court conflicts, each of which independently warrants en banc review. FRAP 35; *Glaser v. Wound Care Consultants*, 570 F.3d 907, 915-16 (7th Cir. 2009). It effectively overrules this Court's decision in *Alicea-Hernandez*, creating a new 3-2 split over whether the ministerial exception bars Title VII hostile work environment claims. It creates a separate split with other courts over application of "neutral principles" to ministerial exception claims. And it directly conflicts with the Supreme Court's decisions in *Hosanna-Tabor* and *Our Lady of Guadalupe*.

Priests should not be able to sue their bishops for how the latter have "chosen to express Church doctrine on same-sex marriage," Op.32, and rabbis should not be able to sue their congregations because they feel insulted. Nor should trial courts be forced to entangle themselves in such claims. Without correction, houses of worship in this Circuit will not enjoy the same freedom

1

from judicial intervention as other churches, synagogues, and mosques around the country. The Court should rehear the appeal.

## STATEMENT

### A. Factual Background

Saint Andrew is a Roman Catholic parish in the Archdiocese of Chicago. Plaintiff-Appellee Sandor Demkovich served as the Music Director, Choir Director, and Organist at St. Andrew. Dkt.16 ¶9. The parties do not dispute that Demkovich was a minister. Op.8.

In 2014, immediately after St. Andrew's pastor, Rev. Jacek Dada, learned that Demkovich had entered a same-sex marriage, Dada met with Demkovich privately and "asked Demkovich to resign from his post because the Catholic Church opposes same-sex marriages" and he had entered a "union [that] is against the teachings of the Catholic [C]hurch." Dkt.16 ¶¶32-33. When Demkovich refused, Dada terminated him.

### B. Procedural Background

Demkovich sued St. Andrew and the Archdiocese, claiming his termination was the result of sex discrimination, in violation of Title VII, and disability discrimination, in violation of the Americans with Disabilities Act. Demkovich alleged that Dada had spoken harshly to him about his same-sex partner and wedding, and about his weight. Dkt.1 ¶¶30, 35-38.

St. Andrew moved to dismiss the claims under the ministerial exception. Dkt.4. The district court agreed, dismissing the complaint while giving Demkovich leave to amend. Dkt.15.

In his amended complaint, Demkovich "alleged much of the same discriminatory conduct, but modified his claims to challenge only the hostile work environment, rather than the firing itself." Dkt.73 at 1. St. Andrew again sought dismissal under the ministerial exception.

The district court ruled that the ministerial exception bars all termination claims but only some hostile work environment claims, dismissing Demkovich's termination-related same-sex marriage claims while allowing the hostile work environment disability claims to proceed. Dkt.36.

In May 2019, the district court certified its decision for interlocutory appeal under 28 U.S.C. § 1292(b). Dkt.73. This Court then authorized this appeal.

**C. Panel Decision**

A divided panel of this Court held that none of Demkovich's hostile work environment claims were barred by the ministerial exception, reinstating his Title VII claims. Op.35. The majority acknowledged that it was siding with the Ninth Circuit and against the Tenth Circuit in a circuit split over the scope of the ministerial exception, which it understood to reach only "tangible employment actions," such as hiring, firing, and promotions. Op.3. The majority further acknowledged that it was adopting a more aggressive position

3

than the Ninth Circuit by permitting hostile work environment claims even where the religious defendants had a religious justification for their actions. Finally, the panel also distinguished this Court's decision in *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003), finding that it did not concern hostile work environment claims. Op.10-14.

Judge Flaum—who authored *Alicea-Hernandez*—dissented. He concluded that, far from distinguishing *Alicea-Hernandez*, the panel majority flatly disregarded "controlling precedent." Op.36. He agreed with the Tenth Circuit that adjudicating "hostile work environment claims will unavoidably and excessively entangle the courts in religious matters at the core of the protected ministerial employment relationship." Op.36. He warned that the "majority opinion essentially erases the distinction between ministers and non-ministers as to hostile work environment claims," an outcome which "misses the point of the ministerial exception." Op.45.

Judge Flaum concluded that the majority's "parsing and recharacterizing of claims," coupled with its "indeterminate" guidance on what constitutes "tangible employment actions," would leave the ministerial exception at the mercy of "artful pleading," give religious employers a "perverse incentive" to fire their ministers to avoid liability, and thrust an "unworkable task" upon district courts trying to make sense of the new rules. Op.38-40.

# ARGUMENT

## I. The panel decision moves this Court from one side of a 4-1 circuit split to the other, allowing ministers to bring Title VII hostile work environment claims and effectively overruling *Alicea-Hernandez*.

There has long been an acknowledged 4-1 circuit split over whether the ministerial exception precluded ministers from bringing Title VII hostile work environment claims against their religious employers. The Ninth Circuit allows these claims to proceed, but the Fifth, Tenth, and Eleventh Circuits— and until August 31, this Court—forbid them. *Compare Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940 (9th Cir. 1999) *and Elvig v. Calvin Presbyterian Church*, 375 F.3d 951 (9th Cir. 2004) *with Combs v. Cent. Tex. Annual Conf. of the United Methodist Church*, 173 F.3d 343, 350-51 (5th Cir. 1999) (churches are "free from Title VII's restrictions" in their relationship with ministers), *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244-46 (10th Cir. 2010) ("any Title VII action brought against a church by one of its ministers" forbidden) *and Gellington v. Christian Methodist Episcopal Church*, 203 F.3d 1299, 1301 (11th Cir. 2000) ("Title VII is not applicable to the employment relationship between a church and its ministers"). And courts have typically treated this Court's decision in *Alicea-Hernandez* as one of the primary cases on the *majority* side of the split. *See, e.g., Skrzypczak*, 611 F.3d

at 1245 ("follow[ing] the Seventh Circuit's decision in *Alicea-Hernandez*" to forbid such claims).

But the panel decision changes all that, moving the Seventh Circuit to the minority side of a now 3-2 split. Indeed, the panel admits that this Court would "join the Ninth Circuit" and "depart from the Tenth," a move it concedes will force courts in this Circuit to resolve "[s]ensitive issues of potential entanglement" under the Establishment Clause. Op.3. Overruling *Alicea-Hernandez* and creating a new, entrenched, and irreconcilable 3-2 split both warrant en banc review.

## A. The panel's decision effectively overrules *Alicea-Hernandez*.

The panel justified its decision by saying that both the Tenth Circuit and *Alicea-Hernandez*'s own author Judge Flaum misunderstood *Alicea-Hernandez*—that in fact *Alicea-Hernandez* had nothing to do with hostile work environment claims. Op.10-13. But this reimagining of *Alicea-Hernandez* is wrong on both the law and the facts.

### 1. *Alicea-Hernandez* barred all Title VII claims.

*Alicea-Hernandez* defined the "ministerial exception" as forbidding "'application of the provisions of Title VII to the employment relationship existing between . . . a church and its minister.'" 320 F.3d at 702-03 (quoting *McClure v. Salvation Army*, 460 F.2d 553, 560-61 (5th Cir. 1972)). Indeed, the First Amendment foreclosed all "Title VII claims brought against a church by

its ministers." *Id.* at 703. Thus this Court rejected the plaintiff's request to "look to the nature of her claims" under Title VII. *Id.* Rather, "[t]he ministerial exception to Title VII" applies "without regard to the type of claims being brought." *Id.*

That conclusion followed from *Young v. Northern Illinois Conference*, this Circuit's first ministerial exception ruling. *Young* rejected the idea that "Title VII may be applied to decisions by churches affecting the employment of their clergy," since judicial reviews of such decisions were "*in themselves*" impermissibly "'extensive inquir[ies]' into religious law and practice and hence forbidden by the First Amendment." 21 F.3d 184, 187 (7th Cir. 1994).

Later Seventh Circuit cases likewise understood *Alicea-Hernandez* to mean that a church cannot be "constrained in its dealings with [ministers] by employment laws." *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1040 (7th Cir. 2006). And last year this Court confirmed that "Title VII of the Civil Rights Act of 1964 does not apply to ministers." *Sterlinski v. Catholic Bishop of Chicago*, 934 F.3d 568, 569-72 (7th Cir. 2019).

Indeed, courts considering *Alicea-Hernandez* have understood this Court to bar Title VII claims generally and hostile work environment claims specifically. In *Elvig*, both the majority and dissent agreed that *Alicea-Hernandez* barred Title VII claims. 375 F.3d at 960 n.4 (majority op.) ("[u]nlike the Seventh Circuit, *Bollard* did not presume that all Title VII claims" are

barred); *id.* at 979 (Trott, dissenting) (under *Alicea-Hernandez* and *Young*, Elvig's claims would face a "terminal fate . . . in the Seventh Circuit"); *Elvig v. Calvin Presbyterian Church*, 397 F.3d 790, 799 (9th Cir. 2005) (Kleinfeld, dissenting) (*Alicea-Hernandez* showed that *Elvig*'s "crabbed application of the 'ministerial exception' . . . sets us apart from all of our sister circuits"). And the Tenth Circuit reached its conclusion that all Title VII claims are barred by expressly following in *Alicea-Hernandez*'s footsteps. *Skrzypczak*, 611 F.3d at 1245.[1]

## 2. The *Alicea-Hernandez* plaintiff raised a hostile work environment claim.

The panel decision ignores *Alicea-Hernandez*'s holding that every "type of claim[]" under Title VII is barred. 320 F.3d at 703. Instead, it focuses solely on whether *Alicea-Hernandez* barred one type of Title VII claim: hostile work environment claims. Denying that *Alicea-Hernandez* reached hostile work environment claims, the panel asserts that the pro se plaintiff "did not clearly delineate her claims by reference to . . . a hostile work environment." Op.11. This is false. At every stage of the case, the *Alicea-Hernandez* plaintiff,

---

[1] *See also Dayner v. Archdiocese of Hartford*, 23 A.3d 1192, 1207 (Conn. 2011) (recognizing "circuit split" between Ninth Circuit and the Seventh, Tenth, and Eleventh Circuits, and that *Alicea-Hernandez* rejected "a claim for damages arising from harassment" under Title VII).

defendant, and courts understood her to have a hostile work environment claim.

Alicea-Hernandez repeatedly invoked a hostile work environment. *See Alicea-Hernandez v. Archdiocese of Chicago*, No.01-C-8374 (N.D. Ill.):

- Compl., Dkt.1 at 4-5 (claim for "prolonged humiliation and emotional stress" of "hostile environment to which I was subjected")

- Civil Cover Sheet, Dkt.1 at 14 ("[h]ostile environment")

- EEOC Charge, Dkt.1 at 7 ("hostile environment")

- Mot. to Reconsider, Dkt.16 at 6, 8, 11 ("discrimination [plaintiff] bases her claim on involves . . . [a] hostile work environment"; "discrimination case based upon a hostile environment"; comparing her case to others that "filed claims of hostile work environment pursuant to Title VII")

- Plaintiff Aff., Dkt.16 at ¶ 12 ("In my complaint, I alleged [defendant was] creating a hostile work environment")

And in her Seventh Circuit briefing:

- Opening Br.9, 16, 20 (plaintiff's "complaint is solely based on . . . the hostile work environment she experienced")

- Reply Br.7, 11 (claim was "the environment in which she worked was hostile"; emphasizing "the mistreatment she suffered while employed")

What else was a pro se plaintiff supposed to do to make out a hostile work environment claim?

The Defendant Archdiocese certainly thought she had. *See* Resp.Br.3; *id.* at 19, 28 (describing claim that "unequal treatment . . . created a hostile work environment"; claims "based solely upon 'a hostile environment and unequal treatment.'").

The courts did too. *Alicea-Hernandez v. Archdiocese of Chicago*, 2002 WL 598517 at *4 (N.D. Ill. Apr. 18, 2002) ("hostile work environment" under Title VII); *id.* at *1 ("harassed"); 7th Cir. Arg. Tr., 2002 WL 34512669 (judge noting "specific work conditions" supporting claims; judge listing alleged "hostile" actions which were "a lot more" than poor office accommodations; counsel stating supervisor "was hostile to her" and was "creating the hostility"); 320 F.3d at 702 (noting alleged "prolonged humiliation and emotional stress").

The majority's account is thus entirely mistaken.[2]

---

[2] The panel also asserts *Alicea-Hernandez*'s hostile work environment claim was not "viable." Op.12 n.3. Even if true, viability is irrelevant since the ministerial exception is logically and jurisprudentially prior to assessing a claim's validity. *McCarthy v. Fuller*, 714 F.3d 971, 975-76 (7th Cir. 2013) (exception "closely akin" to various forms of "official immunity," and must be resolved as a threshold matter); *accord Korte v. Sebelius*, 735 F.3d 654, 678 (7th Cir. 2013) ("[T]he church-autonomy principle operates as a complete immunity, or very nearly so.").

**B. The panel decision created a new 3-2 split.**

The majority's mistaken understanding of *Alicea-Hernandez* creates a new 3-2 circuit split, warranting en banc review. Prior to the panel's decision, most courts had seen *Alicea-Hernandez* as one of the leading cases for the rule that the ministerial exception precludes hostile work environment claims. *See supra* Section II.A.1. Indeed, the Tenth Circuit specifically "ch[o]se" to follow the Seventh Circuit and not the Ninth in rejecting such claims. *Skrzypczak*, 611 F.3d at 1245. The Fifth and Eleventh Circuits already barred all Title VII claims. *Combs*, 173 F.3d at 350-51; *Gellington*, 203 F.3d at 1301.

The panel decision now abandons the Tenth, Fifth, and Eleventh and follows the Ninth, Op.2, but for no good reason. The Ninth Circuit's position has been roundly criticized from the start. Judges Wardlaw, O'Scannlain, Kozinski, and Kleinfeld dissented in *Bollard*, warning the decision "undermines over a century of Supreme Court jurisprudence, runs contrary to every other [federal] Court of Appeals that has had occasion to visit the issue," and "narrows the ministerial exception nearly to the point of extinction." 211 F.3d 1331, 1332 (9th Cir. 2000). Judge Trott dissented in *Elvig*, explaining that the amorphous nature of hostile work environment claims "will involve, by necessity, penetrating discovery and microscopic examination . . . of the Church's disciplinary procedures." 375 F.3d at 973. Likewise, Judges Kleinfeld, O'Scannlain, Callahan, Bea, Gould, and Bybee wrote or joined three separate

dissents from en banc rehearing in *Elvig*. 397 F.3d 790. They decried the "false distinction" between hostile work environment claims and hiring/firing claims, given the perverse result that "churches will fire ministers who they think expose them to the risk of damage awards and hire those who they think will not." *Id.* at 799.

The Tenth Circuit rejected *Bollard* and *Elvig* to "avoid[] the kind of arbitrary and confusing application the Ninth Circuit's approach has created." *Skrzypczak*, 611 F.3d at 1244-46. The Tenth Circuit agreed with the *Elvig* dissenters that *Bollard* had caused "gross" entanglement with "the Church's core functions, its polity, and its autonomy," and unconstitutionally "influenc[ed] it to employ ministers that lower its exposure to liability rather than those that best further [its] religious objective[s]." *Id.*

The Tenth Circuit instead "follow[ed] the Seventh Circuit's decision in *Alicea-Hernandez*" as the "better-reasoned approach." *Id.* at 1245-46. Under that approach, "*any* Title VII action brought against a church by one of its ministers"—including those "based in part on [the] work environment"—is foreclosed, because it would "improperly interfere with the church's right to select and direct its ministers free from state interference." *Id.* (emphasis added). "To rule otherwise," the Tenth Circuit found, would "enmesh the court" in internal religious governance, which "could only produce by [its] coercive

effect the very opposite of that separation of church and State contemplated by the First Amendment." *Id.* (quoting *Alicea-Hernandez* and *McClure*).

Remarkably, while the panel acknowledges it is taking sides, it does not directly address the Tenth Circuit's reasoning. Instead, it simply asserts that control over "tangible employment actions" is sufficient for churches to manage their ministers "in every way that would be necessary to exercise their religious freedoms." Op.20.

But courts cannot discern "every way" a religious group might find "necessary" to manage its ministers. Presuming otherwise hardly "radiates" a "spirit of freedom" and "independence from secular control or manipulation[.]" *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952). Managing ministers is "strictly ecclesiastical," *id.* at 119; the panel reduces it to "sometimes ecclesiastical." In so doing, the panel dooms courts to "get dragged into a religious controversy" that "they cannot resolve intelligently"—or constitutionally. *Tomic*, 442 F.3d at 1042. "Courts are not equipped" to resolve such matters, precisely because "it is not for courts to regulate" them. Op.43 (Flaum, J., dissenting). Further, the horribles paraded in the panel opinion have never materialized in this Circuit since *Alicea-Hernandez*, or in any of the other majority-rule Circuits. Op.48 (Flaum, J., dissenting); *cf. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 (2012).

Worse, the panel went even *further* than the Ninth Circuit, which "forbids" courts from second-guessing proffered "religious justification[s]" for actions causing an alleged hostile environment. *Elvig*, 375 F.3d at 959, 961. But the panel said courts must evaluate religious justifications "under neutral, generally applicable standards" that "balanc[e] First Amendment rights with [an] employee's rights and the government's interest in regulating employment discrimination." Op.32, 34. This novel standard would impose liability on the Archdiocese for how a superior minister "chose[] to express Church doctrine on same-sex marriage" to a subordinate minister. Op.32. No other Circuit permits such intrusion.

## II. The panel split with the Sixth Circuit, D.C. Circuit, Texas, and Arkansas over whether the "neutral principles" doctrine used in church property disputes may be applied to ministerial employment disputes.

The panel concluded that Demkovich's claims pose no entanglement risk because they can be resolved by "applying neutral, secular principles of law." Op.30. But the "neutral principles" doctrine was developed for church property disputes, and the Supreme Court has never applied it outside the church property context. *Compare Md. & Va. Eldership of the Churches of God v. Church of God at Sharpsburg*, 396 U.S. 367 (1970) (applying neutral principles doctrine to church-property dispute), *and Jones v. Wolf*, 443 U.S. 595 (1979) (same), *with Hosanna-Tabor*, 565 U.S. 171 (no mention of neutral principles

14

doctrine), *and Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049 (2020) (same). Indeed, "internal [church] discipline and government," are subject to the church's "own rules," not secular law. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 724 (1976). The "very process of inquiry" into such matters can "impinge on rights guaranteed by the Religion Clauses." *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979).

Further, the panel split with other courts that recognize the neutral principles doctrine "applies only to cases involving disputes over church property." *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986). In *Hutchison*, the Sixth Circuit explained that the "doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be." *Id.* Because the plaintiff's claim related to his "status and employment as a minister of the church," it was governed exclusively "by ecclesiastical rule, custom, and law," and the neutral principles doctrine was "simply not applicable." *Id.*

In *EEOC v. Catholic University of America*, the D.C. Circuit rejected the argument that a minister's employment dispute "can be resolved without entangling the Government 'in questions of religious doctrine, polity, and practice' by invoking 'neutral principles of law,'" and explained that "the 'neutral principles' to which the Supreme Court referred were those embodied in trust and property law." 83 F.3d 455, 465-66 (D.C. Cir. 1996). Quoting this

15

Court, the D.C. Circuit emphasized that there can be no truly neutral judicial inquiries into the relationships between churches and ministers, since the inquiries are "in themselves" too entangling and thus "forbidden by the First Amendment." *Id.* at 466-67 (quoting *Young*, 21 F.3d at 187).

Similarly, the Texas Supreme Court held that the neutral principles doctrine is "narrowly drawn" and applies only to "disputes over ownership of church property." *Westbrook v. Penley*, 231 S.W.3d 389, 398 (Tex. 2007). And the Arkansas Supreme Court explained that this "narrow" doctrine applies "only with regard to real-property disputes." *El-Farra v. Sayyed*, 226 S.W.3d 792, 795 (Ark. 2006).

These decisions are unsurprising, as applying the neutral principles doctrine to a minister's employment claims "threatens [a religious organization's] independence in a way that the First Amendment does not allow." *Our Lady*, 140 S.Ct. at 2069.

## III. The panel decision directly conflicts with the Supreme Court's *Hosanna-Tabor* and *Our Lady* decisions.

The panel's decision also violates Supreme Court precedent.

First, in discussing the Establishment Clause, the panel strangely "f[ou]nd guidance from the line of Supreme Court cases involving the limits of free exercise of religion"—and even more strangely, relied on *Employment Division v. Smith*, 494 U.S. 872 (1990), for the proposition that "government regulation

of the outward expression of religious belief . . . remains generally permissible." Op.32-33. But in *Hosanna-Tabor*, the Supreme Court directly rejected the use of *Smith* to govern disputes between ministers and their churches. The Court emphasized that "*Smith* involved government regulation of only outward physical acts," while ministerial exception cases "concern[] government interference with an internal church decision that affects the faith and mission of the church itself." 565 U.S. at 190; *see also Our Lady*, 140 S.Ct. at 2060 (exception protects institution's "autonomy with respect to internal management decisions that are essential to the institution's central mission"); *accord Catholic Univ.*, 83 F.3d at 462.

Second, the panel majority's goal, expressed repeatedly throughout its opinion, is to "balanc[e] First Amendment rights with the employee's rights and the government's interest in regulating employment discrimination." Op.34. *See also* Op.2, 3, 23, 27. Because it "base[d] [its] decision" on that premise, Op.34, balancing will be required in *all* future hostile work environment cases involving ministers. But when it comes to the ministerial exception, the Supreme Court has expressly rejected balancing: "the First Amendment has struck the balance for us" because "the authority to select and control . . . is the church's alone." *Hosanna-Tabor*, 565 U.S. at 195-96. *See also Our Lady*, 140 S.Ct. at 2060-61; *Young*, 21 F.3d at 185 (First Amendment "prevails over" Title VII).

Thus, in direct conflict with *Hosanna-Tabor*, the panel revives *Smith* and its balancing test to limit the ministerial exception. Seventh Circuit plaintiffs can now, like Demkovich, simply repackage a Title VII termination claim as a Title VII hostile work environment claim and plunge Seventh Circuit courts back into resolving internal religious disputes the Supreme Court has said are off-limits.

## IV. Exceptionally important First Amendment principles are at stake.

"The ministerial exception 'is undeniably an issue of exceptional importance' because its denial 'portends serious consequences for one of the bedrock principles of our country's formation—religious freedom.'" *Biel v. St. James Sch.*, 926 F.3d 1238, 1240 (9th Cir. 2019) (R. Nelson, J., dissenting).

The ministerial exception implicates both Religion Clauses. The free exercise rights of thousands of religious institutions across the Circuit are at stake, as freedom to decide who leads worship is fundamental to the free exercise right. *Hosanna Tabor*, 565 U.S. at 196; *Sterlinski*, 934 F.3d at 571 ("vital role").

The Establishment Clause's structural limits on judicial entanglement in religious affairs are also at stake. *Tomic*, 442 F.3d at 1042; *Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113, 118 n.4 (3d Cir. 2018). Letting the panel decision stand will embroil judges and juries in the internal religious affairs of

churches, synagogues, and mosques, creating the very church-state conflicts the ministerial exception seeks to avoid.

## CONCLUSION

Defendants-Appellants respectfully request that the Court grant rehearing.

October 5, 2020                    Respectfully submitted,

                                   /s/ Eric C. Rassbach
                                   Eric C. Rassbach
                                   Daniel H. Blomberg
                                   Daniel D. Benson
                                   Christopher Mills
                                   The Becket Fund for
                                     Religious Liberty
                                   1200 New Hampshire Ave. N.W.,
                                     Ste. 700
                                   Washington, DC 20036
                                   (202) 955-0095
                                   erassbach@becketlaw.org

                                   James C. Geoly
                                   Archdiocese of Chicago
                                   835 N. Rush Street
                                   Chicago, IL 60611
                                   (312) 534-8303

                                   Alexander D. Marks
                                   Burke, Warren, MacKay &
                                     Serritella, P.C.
                                   330 North Wabash Ave., 21st Floor
                                   Chicago, Illinois 60611
                                   (312) 840-7000

                                   *Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of FRAP 35(b)(2)(A) because it contains 3,898 words, excluding the parts of the brief exempted by FRAP 32(f).

2.  This brief complies with the typeface requirements of FRAP 32(a)(5) and 7th Cir. R. 32(b), and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 13-point typeface.

/s/ Eric Rassbach
Eric Rassbach

*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Eric Rassbach
Eric Rassbach

*Counsel for Defendants-Appellants*